AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

### DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                         AFFIDAVIT

MICHAEL BRIAN WHEELER

CASE NUMBER:

UNDER SEAL

I, Complainant Special Agent In Charge Patrick McKenna, Jr., being duly sworn, state the following is true and correct to the best of my knowledge and belief:

1.  Your Complainant, Patrick McKenna, Jr., is a Special Agent In Charge with the Office of the Special Inspector General for Iraq Reconstruction (SIGIR).  Your Complainant's responsibilities include the investigation of possible criminal violations of the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act (Title 18, United States Code) and other criminal offenses.

2.  I have been a Special Agent in Charge with SIGIR for over 18 months.  Prior to that, I was a Special Agent with the U.S. Government in various agencies for over 30 years. I have personally conducted or assisted in investigations of alleged criminal violations of U.S. law, including the Money Laundering Control Act of 1986, codified at 18 U.S.C. §§ 1956 and 1957. I am familiar with the facts and circumstances set forth below from my participation in the investigation of WHEELER and others, as well as through conversations with other law enforcement agents, in particular agents of the Internal Revenue Service, Criminal

1

Investigation Division (IRS-CID) and Immigration and Customs Enforcement (ICE), and through reviewing evidence obtained during the course of the investigation. This Complaint is being submitted for the limited purpose of establishing probable cause to believe that WHEELER has knowingly conspired to violate the criminal laws of the United States, namely, conspiring to violate 18 U.S.C § 201 (Bribery), 18 U.S.C. § 654 (Officer or Employee of the United States Wrongfully Converting Property of Another), 18 U.S.C. § 922(o) (Possession of a Machine Gun), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property), and 26 U.S.C. § 5861(d) (Receipt or Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record) in violation of 18 U.S.C. § 371 (Conspiracy); and for conspiring to violate 18 U.S.C. §§ 1956 and 1957, in violation of 18 U.S.C. § 1956(h) (conspiracy to commit money laundering). Therefore, I have not included the details of every aspect of this investigation but only those facts to support probable cause. Where conversations or statements are related herein, they are related in substance and in part only unless otherwise indicated.

3. This Application for a Criminal Complaint arises from a criminal investigation of WHEELER and others following an audit in late 2004. WHEELER was a United States Army Reserve officer, attached to and serving with the Coalition Provisional Authority – South Central Region (CPA-SC) in Al-Hillah, Iraq and responsible for developing and ordering contracts and contract solicitations on which the CPA expended funds in the reconstruction efforts of Iraq.

4. Co-conspirator One is a United States citizen, who, during all relevant times, operated and controlled several construction and service companies (hereinafter referred to collectively as the "Company") in Iraq and Romania which were awarded contracts from the

CPA-SC. Co-conspirator One conspired with United States Government contract employees and military officials, including WHEELER, to obtain fraudulently awarded CPA contracts for the reconstruction and stabilization of Iraq. The investigation has revealed that contracts were awarded to the Company or other businesses controlled by Co-conspirator One through a rigged bidding process; that the work was ordered by certain of Co-conspirator One's co-conspirators, including WHEELER; and that such contracts were authorized for payment by others, including co-conspirators (in some cases without any performance of the contracts by the Company or Co-conspirator One's other companies). The investigation further revealed that Co-conspirator One, through his businesses and personal bank accounts, paid money and other things of value as bribes, kickbacks and gratuities to United States Government officials, including WHEELER and his co-conspirators. Co-conspirator One was arrested on November 13, 2005, and has admitted that the bidding process was rigged. He has also described the mechanisms that he used to transfer funds to the United States to, or on behalf of, Co-conspirators Two and Three and others.

     5. Co-conspirator Two was a public official who held the position of Comptroller and Funding Officer for the CPA-SC. In this capacity, Co-conspirator Two controlled the expenditure of approximately $82 million dollars in currency which was to be used for payment of contract services rendered in Al-Hillah, Iraq, including contracts awarded to Co-conspirator One and his businesses. Co-conspirator Two worked directly with WHEELER in the solicitation and obligation of CPA funds for contracts that were fraudulently awarded to Co-conspirator One. The investigation has revealed that in addition to accepting money from Co-conspirator One, Co-conspirator Two, WHEELER, and their co-conspirators stole

3

currency from the CPA and either directly brought those funds back to the United States or laundered those funds with the assistance of Co-conspirator One and his companies.

6. Co-conspirator Three was a public official who worked with WHEELER and Co-conspirator Two and, like WHEELER, was involved in ordering work that was the subject of contract solicitations in the CPA-SC Region. Co-conspirator Three has been cooperating with your Complainant and other law enforcement officers involved in the investigation of this matter. Co-conspirator Three has admitted to investigators that he unlawfully received cash and goods from Co-conspirator One in return for using his official position to help obtain CPA-SC Region contracts for Co-conspirator One's companies.

7. Witness A is an Iraqi business owner who conducted business in Al-Hillah, Iraq, and was personally familiar with the contracting processes conducted by WHEELER, Co-conspirators Two and Three, and other public officials in the CPA-SC Region.

8. The investigation has revealed that there were no legitimate competing bids for any of the contracts awarded to Co-conspirator One's companies. Rather, according to Witness A, Co-conspirator One and Co-conspirator Three, the contracts awarded to Co-conspirator One's companies were rigged by Co-conspirator Two, Co-Conspirator Three and others through the submission of fake or excessively "high" bids designed to enable other co-conspirators to award the winning "low" bid to Co-conspirator One's companies or companies under Co-conspirator One's control.

9. The investigation has further revealed, and Co-conspirator One has admitted, that Co-conspirator One and others would engage in unlawful acts to obtain contracts fraudulently and receive payments, or cause payments to be made, on such contracts awarded to Co-conspirator One's companies. The contracts were purported to be for the rebuilding and

stabilization of Iraq, including but not limited to the renovation of the Karbala Public Library, demolition work related to, and the construction of, the Al Hillah Police Academy, the upgrading of security at the Al Hillah Police Academy, and the construction of the Regional Tribal Democracy Center. With the assistance of Co-conspirators Two and Three, and others, Co-conspirator One submitted, or caused to be submitted, numerous bids on the same contract. The "high bids" were submitted in the names of different companies all controlled by Co-conspirator One or companies that simply did not exist. Co-conspirator One would also submit, or cause to be submitted, a "low" bid in the name of one of his companies. Co-conspirators Two and Three, and others, including public officials purportedly acting in their official capacities, would then ensure that the contract was awarded to one of Co-conspirator One's companies or companies under his control. The value of these contracts ranged up to $498,900. Co-conspirator Two's approval authority for awarding contracts was limited to contracts less than $500,000.

     10. Between January and June 2004 through the purportedly official efforts of WHEELER and his co-conspirators, Co-conspirator One received at least $3,500,000 in payment for numerous contracts awarded by the CPA- SC Region of Iraq to companies owned by Co-conspirator One or under his control. The investigation has revealed that Co-conspirator Two structured the contracts fraudulently awarded to Co-conspirator One in amounts under $500,000 in order to avoid scrutiny by CPA Baghdad and other official auditors by keeping the value of all of the contracts beneath Co-conspirator Two's contract authority and thereby avoiding higher level scrutiny of the fraudulently awarded contracts. The investigation has further revealed that Co-conspirator Two would authorize specific payments to Co-conspirator One on CPA Form 44, a form which was designed and intended for small purchases not more

than $15,000.  The payments authorized by Co-conspirator Two grossly exceeded this $15,000 purchase limit. On or about May 30, 2004, Co-conspirator Two's approval authority was revoked for failure to account for the funds entrusted to him.

11.  The investigation has further revealed that Co-conspirator Two and others, without proper authority, would request and authorize payment to Co-conspirator One's companies or companies under his control, including payments in advance of performance and despite defective performance of the contracts.

12.  Co-conspirator One, acting directly or through businesses he controlled, and in return for official action by WHEELER, Co-conspirators Two and Three, and others, would pay bribes, kickbacks and gratuities to Co-conspirator Two and Three and others, including but not limited to the transfer of funds from foreign bank accounts in Iraq, Switzerland, Romania and Amsterdam to bank accounts in the United States, including accounts maintained in the United States held in the names of Co-conspirator Two and/or Co-conspirator Two's spouse, Co-conspirator Three and/or Co-conspirator Three's spouse, or others.

13.  The investigation has further revealed that large amounts of cash were transported at the direction of Co-conspirator Two to the CPA-SC from the CPA's accounts with the Central Bank of Iraq which held its accounts with the Federal Reserve of New York.  Co-conspirator Two was authorized to request large amounts of cash from the CPA's accounts in order to pay contractors for services rendered to the CPA-SC.  However, rather than use all of the funds for legitimate services rendered to CPA-SC, Co-conspirators One, Two and Three have stated that WHEELER, Co-conspirators Two and Three, and other public officials stole hundreds of thousands of dollars in cash from these CPA funds.  Because of their employment by and connection to the United States Department of Defense, WHEELER and his co-

conspirators often were able to travel on United States military transports back to the United States. These transports permitted them to avoid the United States Customs inquiries into what they were transporting into the United States. At other times, WHEELER and his co-conspirators traveled on commercial airplanes and failed to disclose to authorities that they were transporting more than $10,000 in currency. The investigation has revealed that WHEELER, Co-conspirators Two and Three, and others smuggled hundreds of thousands of dollars of currency, including stolen CPA funds into the United States.

14. Co-conspirator Two has stated that he helped WHEELER, while both were working for the CPA, steal $100,000 in cash from the CPA-SC. WHEELER transported the $100,000 in CPA funds from Al-Hillah, Iraq back to Ft. Bragg, North Carolina. Financial and other banking records reveal that upon returning to Wisconsin from North Carolina WHEELER paid a fire alarm company in Fort Atkinson, Wisconsin $58,000 in cash for a variety of high-end tools.

15. In addition to assisting Co-conspirator One obtain CPA contracts, in 2004, WHEELER, conspiring with Co-conspirators One and Two and others, purchased and transported firearms and related firearm implements with CPA funds that were laundered through Co-conspirator One. In the course of the scheme WHEELER and Co-conspirator Two took possession of numerous firearms and firearm implements in violation of numerous federal laws, including 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d), including: four M203 grenade launchers (Stock Number LM500007, 500006, 500016 and 500029); twenty HK53A3 fully-automatic submachine guns (Stock Numbers 76-116138 through 76-11657); twelve SA58 .308 caliber machine guns (Stock Numbers DS23753, 23746, 23904, 24198, 24223, 24217, 23724, 24210, 23740, 23765, 23783, and 23750); twelve MK23 .45 caliber pistols (Stock Numbers 23-009571-009582); one-hundred H&K 5.56 caliber 30 round magazines; four MK-23 .45 caliber

silencers (Stock Numbers MK237157-237160); and sixty MK23, 12 round magazines; twelve H&K rail systems.

16. Co-conspirator Two has told investigators that the firearms were purchased so that he could ship them back to the CPA-SC where they were going to be used for the personal protection of CPA-SC employees. However, the investigation has revealed that Co-conspirator Two and WHEELER kept the weapons in the United States and converted them to their own personal use. The investigation has further revealed that Co-conspirator One wired funds to pay for the purchase of the weapons and that Co-conspirator Two used CPA funds to repay Co-conspirator One. The firearms were shipped to the United States Army's 3rd Special Forces Group at Ft. Bragg, North Carolina to the attention of Co-conspirator Two. The investigation has further revealed that because many of the firearms are specialized and used primarily for military applications and in order to conceal the fact that the firearms were being purchased so that Co-conspirator Two could send them back his office in Iraq, Co-conspirator One and Co-conspirator Two described the justification for the purchase of the firearms as a "Federal Law Enforcement Sales Order." However, Co-conspirators One and Two and WHEELER are not federal law enforcement officers.

17. Co-conspirator Two has informed investigators that he agreed with WHEELER that WHEELER would travel from Al-Hillah, Iraq to Ft. Bragg, North Carolina and use WHEELER's status as a high-ranking United States Army officer in order to enter Ft. Bragg and obtain possession of the firearms on behalf of Co-conspirator Two. WHEELER traveled to the Ft. Bragg armory where he inventoried the weapons purchased by Co-conspirator One and signed several Department of the Army Form 3161 receipts for the firearms which transferred the weapons to his control. WHEELER then transported the firearms to his hotel room in

Fayetteville, North Carolina.  WHEELER kept the firearms in his hotel for two days until he and Co-conspirator Two met at his hotel room.  They then transported the weapons to Co-conspirator Two's home in the vicinity of Fayetteville, North Carolina.  Co-conspirator Two has informed investigators that in return for WHEELER's assistance with awarding contracts to Co-conspirator One and facilitating the purchase and shipment of the firearms, Co-conspirator Two provided WHEELER two .45 caliber pistols and two 5.56 caliber fully-automatic submachine guns.  Thereafter, WHEELER returned to his home in Wisconsin.  Instead of shipping the remaining firearms to Iraq, Co-conspirator Two kept them in his garage at one of his hones in the vicinity of Fayetteville, North Carolina until the weapons were seized during the course of a search of Co-conspirator Two's home on November 15, 2005.

18.  During the search of Co-conspirator Two's home, investigators found numerous firearms as described by WHEELER and Co-conspirator Two and in the DA Form 3161 receipts obtained by investigators, including numerous firearms prohibited by 18 U.S.C. 922(o).  The Bill of Lading inside the box containing the firearms revealed that Co-conspirator One had purchased the weapons from a firearms manufacturer in Charlotte, North Carolina and had them sent to Ft. Bragg, North Carolina where, according to the Bill of Lading, Co-conspirator Two was to receive the weapons.  Co-conspirator Two completed and signed a General Services Administration Form 1449 contract to purchase the firearms and listed Co-conspirator Two as the purchaser.  He transmitted this form from Al-Hillah, Iraq to Sterling, Virginia.  Financial records show that Co-conspirator One wire transferred $69,620 from his account with Deutsche Bank and Trust Company of the Americas to the manufacturer in North Carolina.

19.  Based upon your Complainant's experience, I believe that the financial, firearms

and monetary transactions described above are part of a conspiracy to violate United States law, including but not limited to 18 U.S.C. §§ 201, 654, 922(o), 1343 and 2314, and 26 U.S.C. § 5861(d), all in violation of 18 U.S.C. § 371, and a money laundering conspiracy to violate Sections 1956 and 1957 of Title 18, United States Code.  I believe that WHEELER and others caused or facilitated such financial transactions, which involved the proceeds of specified unlawful activities, namely, the interstate transportation of stolen financial funds (18 U.S.C. § 2314) and wire fraud (18 U.S.C. § 1343) in order to conceal the source and origin of the funds and to promote further unlawful activity.  I further believe that WHEELER and others caused or facilitated monetary transactions involving criminally derived property, by through or to financial institutions, in amounts exceeding $10,000.   I believe that WHEELER caused and facilitated the embezzlement and wrongful conversion of property obtained in the execution of his duties (18 U.S.C. § 654).  In addition I believe that WHEELER and others committed bribery (18 U.S.C. § 201).

    Signature of Complainant:     _____

                                            **Patrick McKenna, Jr.**
                                            **Special Agent In Charge**
                                            **Special Inspector General for Iraq Reconstruction**

Approved:   Richard Weber, Chief
              Mark J. Yost, Trial Attorney
              Patrick Murphy, Trial Attorney
              Asset Forfeiture and Money Laundering Section, Criminal Division,
                  U.S. Department of Justice

              Noel L. Hillman, Chief
              James A. Crowell IV, Trial Attorney
              Ann C. Brickley, Trial Attorney
              Public Integrity Section, Criminal Division, U.S. Department of Justice


**Sworn to before me and subscribed in my presence on Nov. \_\_\_, 2005, at Washington, D.C.**

Signature: _____          _____, Magistrate Judge